UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WARREN A. BROWN,

        Petitioner,

                                      CASE NO. 2:07-CV-12264

    v.                             CHIEF JUDGE GERALD E. ROSEN

                                        MAGISTRATE JUDGE PAUL J. KOMIVES

MARY BERGHUIS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    *Illegal Search (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.    *State Court Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     E.    *Evidentiary Claims (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
          2.    *Evidence Regarding Ownership of Money* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          3.    *Drug Profile Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     F.    *Right to Present a Defense (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
     G.    *Sentencing Claim (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
     H.    *Ineffective Assistance of Counsel (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
              a.  Suppression Hearing Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
              b.  Drafting of Forfeiture Pleading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
     I.    *Cumulative Error (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
     J.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Warren A. Brown is a state prisoner, currently confined at the Michigan Reformatory in Ionia, Michigan.

2.      On May 2, 2002, petitioner was convicted of possession with intent to deliver 650 grams or more of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(I); possession with intent to deliver marijuana, MICH. COMP. LAWS § 333.7401(2)(d)(iii); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On May 16, 2002, he was sentenced to a term of life imprisonment on the cocaine conviction, a concurrent term of 20-48 months' imprisonment on the marijuana conviction, and a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.      Whether the defendant's rights under the Fourth Amendment of the United States Constitution as well as the Due Process Clause of the Fourteenth Amendment to the United States Constitution and/or under the similar provisions of the Michigan Constitution were violated by the trial court's denial of defendant's Motion to Suppress and defendant's request for an evidentiary hearing of defendant's Motion to Suppress, when there was substantial evidentiary and testimonial support as well as newly discovered evidence supporting defendant's allegations of fraud upon the court, misrepresentation and other misconduct by the prosecutor's crucial police witness at the prior hearing and where the testimony challenged was necessary for a finding of probable cause?
>
> II.     Whether the court erred reversibly in ruling that the Officer in Charge could testify that the defendant had sought the return of the money found with the

drugs based upon the "Wherefore Clause" in the Answer to Complaint for Forfeiture which was entered into evidence as an admission of a party-opponent where the testimony provided the only direct evidence connecting the defendant with the narcotics and denied the defendant due process of law under the state and federal constitutions through the introduction of the fruit of an illegal search.

III.   Whether the court erred in permitting the Officer in Charge to present drug profile evidence, over a defense objection, and erred further in permitting the evidence to be used as substantive evidence of guilt and thereafter further erred by refusing to give the jury a limiting instruction, over a defense objection, requiring reversal?

IV.   Whether the court erred reversibly where the court refused to order the production of Officer Delford Fort who was present at the scene and who was listed as a defense witness for over one year and was necessary for the defense and where the predecessor Judge did order the production of the witness or a missing witness instruction and where the prosecutor engaged in misconduct where the prosecutor previously agreed to produce the witness and stated that she could not where the error denied the defendant the right to present a defense and thereby denied due process of law under the state and federal constitutions?

V.   Whether the defendant must be resentenced where the sentencing Judge was under the misapprehension of law that a conviction for possession with intent to deliver over 650 grams of cocaine allowed him no discretion but to sentence the defendant to life in prison without parole and where there is no evidence that the judge exercised any discretion at all.

VI.   Whether the defendant received ineffective assistance of counsel at the suppression hearing requiring rehearing as well as ineffective assistance of counsel in the drafting of the "wherefore clause" of the forfeiture complaint in such a manner that it was considered by the trial court an admission of a party-opponent of ownership of the money found with the narcotics violating the defendant['s] state and federal constitutional right to the effective assistance of counsel.

VII.   Whether the cumulative effect of these errors deprived the defendant a fair trial and whether the result was a miscarriage of justice?

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Brown*, No. 245177, 2005 WL 2679688 (Mich. Ct. App. Oct. 20, 2005) (per curiam).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Brown*, 475 Mich. 868, 714 N.W.2d 318 (2006).

5.      Petitioner, through counsel, filed the instant application for a writ of habeas corpus on May 24, 2007.  As grounds for the writ of habeas corpus, he raises the seven claims that he raised in the state courts.

6.      Respondent filed her answer on November 30, 2007.  She contends that petitioner's claims are not cognizable, without merit, or procedurally defaulted.

7.      Petitioner filed a reply to respondent's answer on January 14, 2008.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the recovery of drugs and firearms from an apartment owned by petitioner.  As summarized by the Michigan Court of Appeals, the evidence adduced at trial showed that

> [a]fter obtaining a warrant to search an apartment and take defendant into custody, the police searched an upper apartment in a building owned by defendant.  That apartment was occupied by the sister of defendant's girlfriend.  According to the police, while searching that apartment, they were informed that defendant had run into his girlfriend's apartment, which was located on the lower floor of the same building.  The police entered defendant's girlfriend's apartment to arrest defendant. After securing the lower apartment, the police obtained a warrant to search the apartment.  The police subsequently found large amounts of cash, drugs, and weapons inside the lower apartment.

*Brown*, 2005 WL 2679688, at *1.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

4

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Illegal Search (Claim I)*

In his first claim, petitioner contends that the drugs and weapons seized from him should have been suppressed as the result of an illegal warrantless search in violation of the Fourth Amendment. The Court should conclude that this claim is not cognizable.

1.    *State Court Proceedings*

Although as explained below petitioner's claim is not cognizable, reaching this conclusion requires in this case a somewhat detailed examination of the state court proceedings regarding the search and seizure issue.

Much of the case against petitioner was decided in the pre-trial proceedings, when petitioner filed a motion to suppress the evidence seized by the police. On January 20, 1999, the police executed several search warrants, including for the upper apartment (#4) of 3178 Canton in Detroit, and 2494 Canton. After police executed the warrant in Apartment #4, they conducted a warrantless search of a lower apartment in 3178 Canton (Apartment #2). The police subsequently obtained a warrant to search the Apartment #2. The search and seizures at 2494 Canton were determined to be unlawful by Wayne County Circuit Judge Gregory Bill in a separate proceeding. In the criminal proceedings the subject of petitioner's habeas application, petitioner moved to suppress the evidence seized from 3178 Canton pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[1] The testimony at

---

[1]In *Franks*, the Court held that where a defendant shows by a preponderance of the evidence that "a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the . . . false statement is necessary to the finding of probable cause, . . . the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56. Thus, to establish a claim under *Franks* a defendant must establish three elements: "(1) a factual statement made in an affidavit supporting a warrant is false; (2) the affiant made the false statement 'knowingly and intentionally or with reckless disregard for the truth'; and (3) without the false statements, the remainder of the affidavit is insufficient to establish probable cause." *Delta Eng'g v. United States*, 41 F.3d 259, 262 (6th Cir. 1994). Where the first two elements are shown, the third element of the *Franks* test requires the reviewing court to view the affidavit as if the false statements were not included. If the affidavit, so read, nevertheless establishes probable cause for a search, the petitioner's *Franks* claim fails.

the evidentiary hearing was accurately summarized in petitioner's brief on direct appeal:

> The first witness to testify at the hearing was Detroit Police Sergeant James Tolbert. Sgt. Tolbert testified that he was the affiant on the warrant for the lower apartment. He testified that he had no personal knowledge of the material contained within the search warrant for the lower apartment and that he merely relayed the information to the Magistrate given to him by Lieutenant McNamara. (3/20/00, 5). Sgt. Tolbert testified that nothing was confiscated from the lower apartment until he arrived with the warrant. (14). . . .

> The next witness to testify was Detroit Police Lieutenant Arthur McNamara. Lt. McNamara testified that he arrived after the officers had executed the warrant at the upper apartment. (26). He testified that there was a staircase leading from the upper apartment to the lower apartment which is outside of the apartment but not outside of the house. (29, 30).

> He testified that when he arrived a female was pounding on the lower apartment door yelling for someone to come out and that the officers told him that someone had ran [sic] from the upper apartment. (31). He testified that he asked the female who was in the lower unit and she stated that the defendant was in the lower apartment. He testified that he asked the female what was in the lower apartment and she stated that there were guns and that the defendant had a locked closet and that the defendant had ran [sic] from upstairs and he ran downstairs. He also testified that there was the smell of marijuana throughout the entire building. (33). He testified that when the female was in front of the door pounding on the lower apartment door the officers were trying to take cover and trying to stay out of the line of fire. (36). He testified that the female told him there was cocaine in the lower apartment in a closet. He testified that the officers advised him that there were a lot of guns found upstairs. (36).

> The Lieutenant testified that due to the fact that there were guns discovered upstairs and according to the female there were narcotics downstairs and that a person had ran [sic] from upstairs, where guns were found to downstairs, where guns were supposed to be, that there was no reason whatsoever to wait for a search warrant. He testified that it was his order to force the door so no one could gain access to a weapon and shoot through the door. (37). He testified that based upon the smell of burning marijuana that it was his opinion that a crime was being committed in his presence. (39). Lt. McNamara testified that the officers forced the door of the lower apartment and detained the defendant and looked throughout the apartment for anybody else. He testified that there was another female in the apartment. He also testified to observing a gun in the lower unit. He also testified that in the rear closet he observed large stacks of money on a shelf. He testified that once they knew there was no one else in the apartment that he told everybody to

---

See *United States v. Keszthelyi*, 308 F.3d 557, 566-67 (6th Cir. 2002); *United States v. Graham*, 275 F.3d 490, 506-07 (6th Cir. 2001). *See generally, Franks*, 438 U.S. at 171-72.

leave and he shut the door and told the officers to secure the door until he could get a warrant. (40).

Lt. McNamara testified that he then contacted Sgt. Tolbert and relayed the information for the search warrant and Sgt. Tolbert later arrived with the search warrant. (40). Lt. McNamara testified that after Sgt. Tolbert arrived the officers seized currency from a rear closet and that they then forced the lock from a pad-locked closet in the lower apartment and discovered a large amount of marijuana and cocaine. Lt. McNamara testified that he did not see any cocaine in the lower apartment until after the closet door was forced open. (42, 43).

. . . .

Finally, Lt. McNamara testified that he initially forced the door because he felt that he had no alternative to prevent evidence from being destroyed and for officer safety. (43).

Lt. McNamara testified in response to a question by Judge Chylinski that he arrived approximately five minutes after the warrant for the upper unit was executed and ordered the door to the lower unit forced within two to three minutes of his arrival and that he was the only person that relayed information for the warrant to Sgt. Tolbert. (74/5).

Def.-Appellant's Br. on Appeal, in *People v. Brown*, No. 245177 (Mich. Ct. App.), at 14 [hereinafter "Pet'r's App. Br."]. Tania Peterson testified that she was in the upper apartment at the time of the search. She denied telling the officers that petitioner had run down the stairs, and denied smelling burning marijuana in the apartment. Her sister, Tenisha Peterson, lived in the lower apartment and testified that after the police entered the apartment but before the police had obtained a warrant for the lower apartment, they broke down the locked door of a closet in which the drugs were covered. *See id*. at 14-17. The trial court denied the motion to suppress, concluding that petitioner did not have standing to object to the search of the upper apartment and that in any event the warrant for the search of that apartment was valid, that the initial search of the lower apartment was valid based on exigent circumstances because the police had cause to believe that petitioner was in that lower apartment, and that the additional search of the apartment and in particular the closet was validly conducted pursuant to the second warrant. *See* Mot. Hr'g Tr., dated 3/20/00, at 171-91.

In April 2001, a civil forfeiture trial was conducted regarding property seized at both

9

locations.  Based on the testimony of the officers at that trial, petitioner sought a new hearing

regarding the validity of the search of the lower apartment.  Petitioner also sought a new hearing

based on the statements of two officers who were present at the search (and who were subsequently

charged and convicted in federal court on criminal charges) but who were not produced for the

initial hearing.  The trial court denied the motion.  *See* Mot. for New Hr'g Tr., dated 8/30/00.

Petitioner subsequently filed a new motion to suppress, which was heard by Judge Bill, the successor

to Judge Chylinski (who had considered the previous motions to suppress and for a new hearing).

This motion was supported by transcripts from the prior proceedings.  As argued by defense counsel

at the hearing on the motion, petitioner claimed that this evidence showed that Lt. McNamara had

lied at the original motion to suppress hearing:

> Now basically what we're here and what we're saying and what all of this
> evidence shows is that Lieutenant McNamara did not arrive at 3178 Canton five
> minutes after the execution of the initial warrant; he in fact arrived there twenty to
> thirty minutes after the initial execution of the warrant.  He did his best at the hearing
> before Judge Chylinski to set the frame of an exigent circumstance, to act
> immediately in order to protect officers.
>
> Now when it comes to someone providing false testimony to a court, it's
> something that is not done innocently and, from the facts of this case, you can infer
> that it was imperative that at the hearing, Lieutenant McNamara established exigent
> circumstances by either showing, A, he was acting to protect the officers that were
> present at the scene or, B, he was acting to prevent the destruction of evidence.

Mot. to Suppress Tr., dated 5/21/01, at 4.  Defense counsel explained extensively how the prior

testimony showed that Lt. McNamara lied about both the smell of marijuana in the apartment

building and the timeline of events surrounding the search of the lower apartment, the search of the

closet in that apartment, and the obtaining of a warrant for that apartment.  *See id*. at 7-16.  He also

argued extensively that Lt. McNamara's false testimony at the first suppression hearing and the new

evidence entitled petitioner to a new hearing on the matter.  *See id*. at 17-19.  Following counsel's

10

argument, Judge Bill indicated that he had not heard anything which supported a new hearing:

> You've had a number of judges in on this case and so far I'm not persuaded. I'm persuaded there have been some inconsistencies in testimony. There are some ambiguities, I'm persuaded of that. You've done a good job of manifesting that there have been some lapses and some inaccuracies and possibly some improper conduct. But you've had forfeiture hearings, you've had hearings in front of Judge Chylinski.

*Id.* at 19. Counsel made further argument that the case should be dismissed or, alternatively, that a new suppression hearing should be held. *See id.* at 19-22. The court denied the motion:

> First of all, the motion is denied. The request for an evidentiary hearing is denied. I don't think that you've met your burden, Mr. Awada. I've heard from a couple of transcripts before Judge Chylinski, before Judge Sapala, there – I'm not persuaded that I have the grounds to dismiss.

*Id.* at 22.

Petitioner filed another motion to suppress, and the trial court held an evidentiary at which several officers involved in the searches testified. At the conclusion of the hearing, defense counsel again argued extensively that petitioner was entitled to suppression of the evidence or, alternatively, a new suppression hearing based on the evidence presented at the forfeiture trial and the evidentiary hearing the court had just held. Specifically, counsel argued that the evidence showed that Lt. McNamara had lied in the search warrant affidavit for the lower apartment concerning the presence of a marijuana odor and petitioner having run down the stairs to the lower apartment, and showed that the search of the lower apartment occurred before the warrant which covered that apartment had been signed by the magistrate. *See* Evid. Hr'g Tr., dated 2/1/02, at 170-76, 178-80. Judge Bill denied the motion, concluding that although there were inconsistencies in the testimony they were not sufficient to require a new hearing. *See id.* at 181.

The trial court conducted another evidentiary hearing, at which petitioner presented testimony from Tania Peterson and a polygraph examiner, who testified that Peterson had truthfully

stated during the polygraph examination that she did not tell police that petitioner had run down the back stairs to the lower apartment. Based on the testimony at this hearing, defense counsel renewed petitioner's motion to suppress or for a new suppression hearing. *See* Evid. Hr'g Tr., dated 4/15/02, at 68, 73-74. The trial court denied the motion. *See id*. at 74.

Following his conviction, petitioner appealed to the Michigan Court of Appeals raising, *inter alia*, his Fourth Amendment claim. Specifically, petitioner argued both that the police lacked probable cause to enter the lower apartment without a warrant to arrest him, and that the trial court erred in denying his request for a new *Franks* hearing. The court of appeals rejected both arguments. With respect to the probable cause issue, the court reasoned that "[t]here were exigent circumstances to permit the police to enter and secure the lower apartment without a warrant for the safety of the officers involved and to prevent the destruction of evidence after they had probable cause to believe that defendant had fled into that apartment and that the apartment also contained illegal drugs." *Brown*, 2005 WL 2679688, at *2, slip op. at 2. With respect to the new *Franks* hearing issue, the court of appeals accurately explained the *Franks* rule and reasoned that, in light of this rule, a new hearing was not warranted because the subsequent evidence submitted by petitioner would not have required suppression of the evidence under *Franks*. The court explained:

> Although the officer in charge admitted that he incorrectly testified at the Franks hearing about the time he arrived at the scene of the search, that discrepancy does not affect a finding of probable cause. Likewise, contrary to defendant's argument, the time that the truck was rented does not prove that the police searched the lower apartment before the search warrant was issued. The testimony did not indicate that the money seized in the search of the lower apartment was used to pay for the initial truck rental, but rather that the seized money was used to reimburse an officer, who initially paid for the rental with his own money. Further, although some officers did not recall smelling marijuana inside the building, other officers did. Thus, defendant has failed to show that the affidavit contained false information about whether some officers smelled marijuana inside the building. Defendant has also failed to show that any false information in the affidavit regarding the search of

12

the upper apartment, or whether officers heard running in the building, affected a finding of probable cause to issue the warrant, especially given the testimony that Tania Peterson informed officers that defendant ran into the lower apartment. Consequently, the trial court did not abuse its discretion in refusing to grant rehearing of defendant's motion to suppress the evidence.

*Brown*, 2005 WL 2679688, at *3, slip op. at 3-4.

2.      *Analysis*

Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam).  Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts.  "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism."  *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994).  The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim."  *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).

There is no question that Michigan provides such mechanism, in the abstract, to raise and litigate Fourth Amendment claims.  *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001);

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  Petitioner argues, however that this mechanism was frustrated, and thus he did not truly have an opportunity to litigate his Fourth Amendment claim, because Lt. McNamara testified falsely at the initial *Franks* hearing and Lt. McNamara's testimony was the basis for the trial court's ruling.   Even assuming that Lt. McNamara's testimony at the initial hearing was both deliberately false and the basis for the trial court's ruling, however, petitioner had an adequate opportunity to litigate these issues and thus to litigate his Fourth Amendment claim.

At the outset, petitioner has cited no case law supporting his claim that Lt. McNamara's alleged perjury at the suppression hearing deprived him of a full and fair opportunity to litigate his Fourth Amendment claim.  On the contrary, the little case law that exists addressing this issue suggests the opposite.  *See Sneed v. Smith*, 670 F.2d 1348, 1356 (4th Cir. 1982) (*Stone* rule "would of course be swallowed if impairment [of a full and fair opportunity to litigate] could be shown simply by showing error–whether of fact or law–in the state court proceeding.  Sneed's suggestion of perjury is merely a suggestion of factual error."); *Carr v. Runnels*, No. C 03-1369, 2007 WL 133971, at *5 (N.D. Cal. Jan. 16, 2007) (although the use of perjured testimony may state an independent due process claim, it "does not call into question the adequacy of the state hearing procedures with which petitioner was provided."); *United States v. Hernandez*, No. 05 Civ. 4046, 2005 WL 3164063, at *6 (S.D.N.Y. Nov. 29, 2005) (claim that officers committed perjury at the suppression hearing "seeks to attack the outcome of the suppression hearing" and "does not mean that [the state] provided [petitioner] with 'no corrective procedures' at all to redress the alleged Fourth Amendment violations. . . .  Nor can it be said that the alleged perjury caused [petitioner] to be 'precluded from using' the suppression mechanism.  Thus, *Stone v. Powell* bars [petitioner's]

14

claim regarding perjury at the suppression hearing."); *United States ex rel. Pertz v. Carter*, No. 97 C 2066, 1998 WL 42273, at *3 (N.D. Ill. Jan. 29, 1998) (finding claim barred by *Stone* even though claim included allegation of perjury at suppression hearing).

Further, even assuming that as a general matter perjury at a suppression hearing deprives a habeas petitioner of a full and fair opportunity to litigate his Fourth Amendment claim in state courts, in this case petitioner was not denied such a full and fair opportunity because he was given a full and fair opportunity to subsequently litigate the perjury issue. Petitioner sought suppression or a new hearing thrice in the trial court. The first time, petitioner was allowed to present voluminous evidence, in the form of transcripts, to show that alleged perjury and counsel was afforded the opportunity to, and in fact did, present extensive argument as to why this evidence required suppression of the evidence. The second time, petitioner was allowed to present the testimony of several officers in a full-blown evidentiary hearing, and again allowed to argue why this evidence showed that the search was invalid. Finally, petitioner was afforded another evidentiary hearing at which he presented testimony that Tania Peterson was being truthful when she indicated that she had not told police officers that petitioner had run to the downstairs apartment, and again allowed to argue that this evidence established the invalidity of the search. Further, the Michigan Court of Appeals considered both the underlying *Franks* issue and petitioner's evidence that Lt. McNamara committed perjury at the initial *Franks* hearing. Petitioner does not now suggest that there is any evidence regarding the search or Lt. McNamara's perjury which was not presented to and considered by the state courts. As the Seventh Circuit has succinctly described the *Stone* rule, "'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). There can be no question that petitioner was

afforded the right to "present his case" regarding the validity of the search and all of the evidence he had to support his arguments.

To be sure, the trial court repeatedly rejected petitioner's argument that the newly submitted evidence established that the search was invalid, and the court of appeals affirmed this conclusion. And petitioner clearly disputes these conclusions.   Under *Stone*, however, the correctness of the state courts' conclusions is simply irrelevant.   The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar."   *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *see also*, *Willett*, 37 F.3d at 1270 (citing cases).   An argument directed solely at the correctness of the state court decision "goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994).   Again, as succinctly put by the Seventh Circuit, "'full and fair guarantees the right to present one's case, but it does not guarantee a correct result."   *Cabrera*, 324 F.3d at 532.   Because petitioner was afforded repeated opportunities to present his case regarding the *Franks* issue in particular and the validity of the search in general, *Stone* bars his Fourth Amendment claim.   Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Evidentiary Claims (Claims II & III)*

Petitioner next raises two evidentiary claims.   First, petitioner contends that he was denied a fair trial by the introduction of evidence that petitioner sought return of all the money found in the search.   Second, petitioner contends that he was denied a fair trial by the introduction of drug profile evidence.   The Court should conclude that petitioner is not entitled to habeas relief on these claims.

16

1.     *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).  In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and

17

the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2. *Evidence Regarding Ownership of Money*

Petitioner contends that he was denied a fair trial by the introduction of his answer in the forfeiture proceeding in which he claimed ownership of the funds found in the search. Petitioner contends that this evidence was inadmissible because it was not a "statement" under the hearsay rules, and because the court erred in determining that the answer covered the funds seized from the search at 3178 Canton, rather than just the property seized from 2494 Canton. These issues raise matter of state evidence law not cognizable on habeas review. Petitioner's arguments with respect to this issue is limited to his disagreement with the Michigan courts's resolution of these state law matters. Thus, petitioner's claim regarding the admission of the forfeiture answer does not raise a federal constitutional claim cognizable on habeas review.

To be sure, there is a federal constitutional claim lurking in the shadows, namely, a claim based on the Fifth Amendment Self-Incrimination Clause and the Supreme Court's decision in *Simmons v. United States*, 390 U.S. 377 (1968). In *Simmons*, the Court held that statements made by a defendant in a pre-trial suppression hearing claiming an ownership interest in property, made in order to establish the defendant's standing to challenge the search under the Fourth Amendment, could not be used in the subsequent criminal trial. The Court reasoned that allowing such use of the pre-trial suppression hearing statements would force an "intolerable" choice between a defendant's assertion of his Fourth Amendment right to be free from unreasonable seizures and his Fifth Amendment privilege against compelled self-incrimination. *See id.* at 394. Here, however, the *Simmons* rule provides no basis for habeas relief, for three reasons.

18

First, and most importantly, petitioner has never raised, either in the state courts or here, a claim that the admission of his answer from the forfeiture proceeding violated his Fifth Amendment privilege against self-incrimination. A claim that the admission of this statement violated his privilege against self-incrimination is separate and distinct from a claim that the evidence was inadmissible under state evidence law or that its introduction denied him his general due process right to a fair trial. *See Snethen v. Nix*, 736 F.2d 1241, 1244-45 (8th Cir. 1984). Thus, any self-incrimination claim has not been properly raised here and, even if it were, is unexhausted.

Second, even assuming that a claim based on *Simmons* were otherwise properly exhausted and raised here, petitioner could not show that the state court's failure to apply *Simmons* in the circumstances of his case was contrary to or an unreasonable application of that decision. Shortly after the *Simmons* decision, the Supreme Court itself questioned that decision's "intolerable tension" rationale, explaining that this reasoning was "open to question." *McGautha v. California*, 402 U.S. 183, 213 (1971), *vacated in part on other grounds sub nom. Crampton v. Ohio*, 408 U.S. 941 (1972). The Court explained that "[a]lthough a defendant may have a right, even of constitutional dimension, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *McGautha*, 402 U.S. at 213. Not surprisingly, therefore, "[e]fforts to extend the scope of *Simmons* have not fared well." *United States v. Taylor*, 975 F.2d 402, 404 (7th Cir. 1992); *see also*, *In re Federal Grand Jury Proceedings*, 975 F.2d 1488, 1492-93 (11th Cir. 1992) (noting *McGautha* Court's limitation on *Simmons* decision). In particular, outside of the Fourth Amendment suppression hearing context, courts have extended *Simmons* only to situations involving statements made to secure a defendant's Sixth Amendment right to counsel, *see United States v. Anderson*, 567 F.2d 839, 840-41 (8th Cir. 1977); *United States v. Branker*, 418 F.2d 378,

19

380 (2d Cir. 1969), although even in this context the Supreme Court has expressly declined to rule whether the rule of *Simmons* applies.  *See United States v. Kahan*, 415 U.S. 239, 243 (1974).  In short, the "*Simmons* court emphasized that its holding applied only where a defendant must choose between constitutionally protected rights, and not when he merely must choose between a constitutional right and some other benefit." *United States v. McClellan*, 868 F.2d 210, 215 (7th Cir. 1989).

In light of the limited scope of *Simmons* and the questioning of its rationale by *McGautha*, no clearly established federal law compels the conclusion that the admission of petitioner's forfeiture answer violated his privilege against self-incrimination, nor would the state court have been unreasonable in refusing to extend *Simmons* to petitioner's circumstances had the issue been raised in the state courts.  This conclusion is supported by analogous cases decided by the federal courts.  In *United States v. Cretacci*, 62 F.3d 307 (9th Cir. 1995), the Court stated that the *Simmons* rationale applied equally to pretrial forfeiture proceedings: "A defendant's claim of ownership at a pre-trial suppression hearing of property that he contends was unlawfully seized may not be used to prove the defendant's guilt.  For the same reasons, a defendant's claim of ownership of property that was subject to forfeiture may not be used for that purpose." *Id*. at 311 (citation omitted).  This matter, however, was not at issue in *Cretacci* and the court's discussion of the issue occurred in the context of its resolution of a double jeopardy issue which was presented in the case.  It is thus dicta.  *See United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999).  Further, *Cretacci* does not adhere to the distinction between competing constitutional rights and a situation involving competing interests only one of which is of constitutional dimension.  As Judge Kleinfeld reasoned in his concurrence, in which he declined to join the majority's *Simmons* analysis:

20

> Property valued by the true owner is frequently abandoned because that value is exceeded by some cost associated with retaining the property, as when a fishing vessel sinks off the Aleutians, or a diamond ring falls into a crevasse. That the relinquishment may result from a calculation that the penal risk of a claim exceeds the value of the property does not, to my mind, implicate the Fifth Amendment. The property is abandoned regardless.

*Cretacci*, 62 F.3d at 311 (Kleinfeld, J., concurring).  Further, *Cretacci* does little to illuminate clearly established law under § 2254(d)(1) because "*Cretacci* extends the Supreme Court's rule in *Simmons* to a new context . . . [which] was heretofore unannounced." *United States v. El-Difrawi*, 898 F. Supp. 3, 8 (D.D.C. 1995), *aff'd sub nom. United States v. Moheyeldein*, No. 95-3137, 1995 WL 686255 (D.C. Cir. Oct. 5, 1995).

Moreover, *Cretacci* is contradicted by a number of other decisions.  For example, in *Taylor*, *supra*, the Seventh Circuit held that requiring a defendant to claim ownership in connection with a motion for return of property under Fed. R. Crim. P. 41(e) does not implicate the Fifth Amendment. The court explained that the Supreme "Court has declined to use *Simmons* to relieve a litigant in civil litigation of the need to establish elements on which he bears a burden of production or persuasion.  A party who asserts the privilege against self-incrimination must bear the consequences of a lack of evidence. . . .  If this be seen as a 'price' on the assertion of the privilege, so be it." *Taylor*, 975 F.2d at 404 (citations omitted); *see also*, *United States v. $186, 416.00 in U.S. Currency*, 527 F. Supp. 2d 1103, 1130 (C.D. Cal. 2007).[2]  More directly on point is the court's decision in *United States v. Clawson*, 831 F.2d 909 (9th Cir. 1987).  In that case, the court held that the

---

[2]As the Court explained in *United States v. Rylander*, 460 U.S. 752 (1983), the Fifth Amendment does not require that a party asserting the privilege be thereby relieved of the party's burden of production because such a rule "would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his.  None of our cases support this view." *Id.* at 758.

21

defendant's signed affidavit of ownership filed in connection with a motion for return of property in state court was admissible in his federal prosecution to prove that he owned the guns involved. The court explained that "*Simmons* does not extend to all situations in which the defendant makes pre-trial motions indicating his ownership of seized evidence. . . .  Clawson voluntarily made his affidavit in support of a motion for return of things seized.  He was not forced to choose between constitutional rights."  *Id*. at 912.  And in *McClellan*, *supra*, the court found no *Simmons* violation from the introduction of the defendant's prior testimony in adversary bankruptcy proceedings, describing the choice facing the defendant as involving the choice "between a constitutional right and some other benefit" and reasoning that the defendant was "in no way . . . forced to choose between constitutional rights: he retained his right against self-incrimination throughout the bankruptcy proceeding."  *McClellan*, 868 F.2d at 215-16.  Regardless of whether these latter cases or the dicta from *Cretacci* represents the better view of the *Simmons* rule, the entire body of law involving *Simmons* is sufficiently murky that it cannot be said that the introduction of petitioner's forfeiture answer in his criminal trial was either contrary to or an unreasonable application of *Simmons*.

Finally, even if the issue had been properly exhausted and raised here, and even if the claim otherwise provided a basis for habeas relief under § 2254(d)(1), petitioner still would not be entitled to relief because he waived any Fifth Amendment privilege by failing to assert it in the forfeiture proceeding.  As the Supreme Court has explained, a number of its decisions "'stand for the proposition that, in the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not "compelled" him to incriminate himself.'" *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) (quoting *Garner v. United States*, 424 U.S. 648, 654

22

(1976)).  Had petitioner asserted his privilege against self-incrimination at the time of the forfeiture

proceeding, perhaps his interests in the forfeiture proceeding and his privilege against self-

incrimination both could have been accommodated by the trial court, such as by delaying the

forfeiture proceeding until after the criminal trial.  *Cf. Degen v. United States*, 517 U.S. 820, 826-27

(1996).  And had the trial court failed to do so, perhaps petitioner would have had a viable claim for

relief, either within the forfeiture proceeding or at the criminal trial.  However, having wholly failed

to assert his privilege against self-incrimination at the time of the forfeiture proceeding, he may not

now claim that the use of his statements in that proceeding amounted to compelled self-

incrimination.  *See United States v. Kordel*, 397 U.S. 1, 9-10 (1970) (defendant's interrogatory

answers in prior civil suit admission in criminal trial where he did not assert the privilege against

self-incrimination at the time the interrogatories were served; "[h]is failure at any time to assert the

constitutional privilege leaves him in no position to complain now that he was compelled to give

testimony against himself.").

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his

claim relating to the admission of his forfeiture answer.

3.    *Drug Profile Evidence*

Petitioner also contends that he was denied a fair trial by the admission of drug profile

evidence at trial.  At trial, Lieutenant McNamara testified based on his experience in narcotics

investigations that the street value of the drugs found, the way the drugs were packaged, and the

amounts found were not consistent with personal use but with an intent to distribute.  He also

testified that drug dealers typically use a "stash house" to store their drugs and weapons, which is

usually not the dealer's official residence but that of someone the dealer trusts, such as a girlfriend.

23

He testified that the items recovered in the search of the lower apartment at 3178 Canton lead him to conclude that the apartment was being used as a stash house.  Finally, he testified that the guns recovered were typical of the guns used by dealers in their trade.  *See* Jury Trial Tr., dated 5/1/02, at 4-15.  Petitioner contends that his evidence constituted impermissible drug profile evidence, and that its admission denied him a fair trial.  The Court should disagree.

Petitioner was charged with possessing with intent to distribute various narcotics, and thus testimony that the amount, value, and packaging of the drugs was inconsistent with personal use was relevant to petitioner's guilt, as was the presence of weapons typically used in the drug trade.  Likewise, testimony regarding the stash house was relevant to show that although the apartment did not belong to petitioner, the guns and drugs recovered nevertheless may have been his.  In these circumstances, the courts routinely allow police officers to testify that certain factors are indicative of an intent to distribute, rather than mere possession for personal use.  *See People v. Murray*, 234 Mich. App. 46, 53-54, 593 N.W.2d 690, 693 (1999); *People v. Stimage*, 202 Mich. App. 28, 29-30, 507 N.W.2d 778, 780 (1993); *cf. United States v. Butler*, 265 F.3d 464, 471-72 (6th Cir. 2001).  Accordingly, petitioner cannot show that he was denied a fair trial by the introduction of this evidence.

F.    *Right to Present a Defense (Claim IV)*

Petitioner next contends that he was denied the right to present a defense when the court failed to require the prosecutor to produce former Detroit Police Officer Delford Fort.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

Although the Constitution does not explicitly provide a criminal defendant with the right to

"present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law.  Implicit in these provisions is the right to present a meaningful defense.  As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967).  "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact.  The right to offer testimony is thus grounded in the Sixth Amendment." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988).  Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408.  Although the right to present a defense is fundamental, it is not absolute.  Thus, the right must yield to other constitutional rights, *see e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), or to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused."  *Scheffer*, 523 U.S. at 308.  A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315).  Thus, "'[w]hether

the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 47 (2d Cir. 2001)) (alterations by quoting court).

Because petitioner's right to present a defense claim challenges solely the failure of the state court to order the production of a witness, petitioner's claim properly is analyzed under the Compulsory Process Clause of the Fifth Amendment, rather than the more general due process right to present a defense. This technical fact does not alter the analysis, as the standards governing the two analyses are substantially the same. *See Cruz v. Greiner*, No. 98 CIV. 7939, 1999 WL 1043961, at *33 n.27 (S.D.N.Y. Nov. 17, 1999); *cf. United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982) ("a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Sixth Amendment . . . requires some showing that the evidence lost would be both material and favorable.").

2.      *Analysis*

Petitioner's claim relates to the prosecution's failure to secure the presence of former police officer Delford Fort, who was involved in some of the searches in petitioner's case and who was subsequently convicted of various theft and abuse of position crimes in federal court. Petitioner initially filed a motion seeking to depose Fort to secure his testimony for trial. Counsel argued that after Fort was sentenced in federal court, obtaining his testimony by subpoena would be cost-prohibitive. *See* Hr'g Tr., dated 12/1/00, at 2-3. The prosecutor responded that Fort's testimony was not relevant to the trial, but only to the suppression issues already ruled upon by the court. The

26

prosecutor also indicated that it is not uncommon for federal prisoners to be produced pursuant to a properly issue writ. *See id.* at 8-9. The prosecutor stated that there were no plans by the prosecution to endorse Fort as a witness, but that assistance would be provided to defense counsel if he subpoenaed Fort. *See id.* at 15. The trial court denied the request for a deposition, indicating:

> [Y]ou're going to have my assistance in bringing this gentleman in, if you deem him a material witness in this case. . . . So I mean I'll do everything I can to cooperate with you, provided we're given some time and some notice so that we can make those arrangements.
>        But at this point, it's incumbent upon you, I guess, to investigate this matter a little further and see what would be entailed and what kind of notice requirements are necessary, the procedures that would have to be adhered to.

*Id.* at 17.

Defense counsel again raised the matter shortly before trial at a hearing before Judge Bill, arguing that Fort needed to be produced because he was present at the searches and because his name was initially on some of the evidence bags but had been crossed out. *See* Evid. Hr'g & Mot. Tr., dated 4/15/02, at 74-76. The prosecutor responded that Fort's testimony was not relevant because Fort was not present at the search of the lower apartment, and any chain of custody issues were the prosecutor's burden, so that if they did not produce Fort as a witness it was the prosecutor who was taking a risk on that matter. *See id.* at 77. Defense counsel responded that petitioner did not have the financial ability to produce Fort at trial given the expense involved in having him brought to Court by federal authorities. *See id.* at 80-81. The prosecutor replied that Fort's presence could be secured if he were subpoenaed, but that the prosecutor could not just request the U.S. Marshal to deliver him to the state to testify, and that it was petitioner's burden to secure Fort's presence. *See id.* at 82. Judge Bill ruled that petitioner would be entitled to an adverse witness instruction if Fort was not produced by the prosecution.

27

The matter was again raised on the first day of trial before Judge Brookover.  Defense counsel indicated that Fort's testimony was crucial because it contradicted the other officers' testimony regarding the details of the search and specifically whether the officers heard someone running down the stairs from the upper to the lower apartment.  *See* Trial Tr., dated 4/22/02, at 5.  The prosecutor responded that Fort was not involved in the search of the lower apartment and was not present when the officers heard someone running down the stairs, and that the testimony in any event was relevant only to the probable cause issues which had been ruled upon by the court as a matter of law.  *See id.* at 7-8, 9-13.  The prosecutor emphasized that Fort's testimony from the forfeiture trial was that he was initially involved in the search of 2494 Canton, and came to 3178 Canton after entry into the lower apartment had been effected and the apartment searched.  *See id.* at 8.  The prosecutor also argued that Fort had not been endorsed as a witness, and that petitioner had failed to show that he was indigent or financially unable to secure Fort's attendance himself.  *See id.* at 13-14.  Judge Brookover found that the prosecutor was not required to produce Fort and that petitioner was not entitled to an adverse witness instruction because "the issue of the search of the unit at issue here is not an issue for the jury.  It's already been decided as a matter of law and so Mr. Fort's testimony with respect to what – where officers might have been or whether or not he knocked on the lower door doesn't seem at all relevant to the issues in this trial."  *Id.* at 15

The Michigan Court of Appeals rejected petitioner's claim, reasoning that petitioner "knew where Fort was being housed in the federal prison system," and that "[a]lthough [he] complained of the cost involved in producing Fort for trial, he had retained counsel and never claimed that he was indigent and unable to bear the cost of producing Fort.  Because defendant was not indigent, the prosecution was not obligated to produce this witness."  *Brown*, 2005 WL 2679688, at *4, slip

op. at 5. The court of appeals also concluded that petitioner "could have requested a subpoena under the uniform act to secure the attendance of a witness form without a state in a criminal proceeding," but that he had "never made a proper request for production of this witness under the Uniform Act." *Id*. The Court should conclude that this determination was reasonable.

First, petitioner cannot establish that he was denied his right to compulsory process because he has failed to show that he followed the procedures for securing the attendance of Fort as a witness. As the Michigan Court of Appeals noted, petitioner could have used the procedures set forth in the Uniform Act to Secure the Attendance of Witnesses From Without a State, MICH. COMP. LAWS § 767.93(1), to secure Fort's presence. Although the Act is not directly applicable to federal prisoners, its procedures are used to secure the attendance of federal prisoners, *see People v. McFall*, 224 Mich. App. 403, 408 n.1, 569 N.W.2d 828, 831 n.1 (1997), and the United States Bureau of Prisons has a policy of complying with such requests from state courts. *See Barber v. Page*, 390 U.S. 719, 724 n.5 (1968); UNITED STATES DEP'T OF JUSTICE, BUREAU OF PRISONS, PROGRAM STATEMENT 5875.12 (2003) (available online at www.bop.gov/policy/progstat/5875_012.pdf). Further, petitioner could have applied directly to the federal court for a writ of habeas corpus *ad testificandum*. *See Barber*, 390 U.S. at 723-24; 28 U.S.C. § 2241(c)(5). Having failed to follow any of the available procedures for securing Fort's attendance, petitioner cannot claim that his right to compulsory process was denied. *See United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *United States ex rel. Hunter v. Patterson*, 374 F. Supp. 608, 610-11 (S.D.N.Y. 1974).

Second, petitioner did not claim in the state courts that he was unable to follow any of these procedures to secure Fort's presence. Rather, petitioner complained of being required to bear the expense of having Fort produced at trial. Petitioner did not, however, make a showing that he was

29

indigent or otherwise unable to afford this expense, and absent such a showing the Compulsory Process Clause does not require the government to bear the expense of producing the witness. *See United States v. Garmany*, 762 F.2d 929, 934 (11th Cir. 1985); *cf.* FED. R. CRIM. P. 17(b) (defendant seeking to have government bear costs of compliance with subpoena in federal criminal case must make showing of indigency and provide specific facts showing relevance and necessity of witness's testimony).

Third, and most importantly, regardless of whether the court should have required the prosecutor to produce Fort, petitioner cannot show that he was denied his right to present a defense or to compulsory process because he cannot show that Fort's testimony was material or that the absence of the testimony infringed upon a weighty interest of his defense, *i.e.*, that Fort's testimony would have created a reasonable doubt that did not otherwise exist. This is because Fort's testimony was simply irrelevant at trial. All of Fort's testimony at the forfeiture trial and his purported testimony at trial went to the constitutional validity of the search. This, however, was a legal question for the court to resolve, and petitioner therefore had no right to present evidence to the jury regarding the legality or validity of the search. *See United States v. Nolan*, 551 F.2d 266, 272 (10th Cir. 1977); *United States v. Henry*, No. 88 CR 47, 1988 WL 112202, at *1 (N.D. Ill. Oct. 12, 1988). Because Fort's testimony was relevant only to the pretrial suppression issues, petitioner cannot show that he was denied his right to present a defense by the absence of Fort's testimony at trial.

For these reasons, the Michigan Court of Appeals's rejection of petitioner's claim was not unreasonable, and thus the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Sentencing Claim (Claim V)*

Petitioner next argues that the trial court improperly sentenced him because the trial court thought that a mandatory sentence of life imprisonment was required.  Under the law applicable at the time petitioner's offense was committed, the applicable penalty was "'imprisonment for life or any term of years but not less than 20 years.'"  *Brown*, 2005 WL 2679688, at *5, slip op. at 6 (quoting MICH. COMP. LAWS § 333.7401(2)(a)(I)).[3]  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

As an initial matter, respondent's argument that this claim raises a state law issue not cognizable on habeas review is without merit.  Although the trial court's imposition of a sentence within the applicable maximum penalty prescribed by the legislature is generally a state law issue, under the Supreme Court's decision in *Hicks v. Oklahoma*, 447 U.S. 343 (1980), "it is clear that due process is violated when a sentencing judge or jury is unaware of discretionary sentencing alternatives."  *Payton v. Whitley*, 941 F.2d 1321, 1322 (5th Cir. 1991) (citing *Hicks*, 447 U.S. at 346).  Thus, petitioner's claim that his sentence violated due process because the trial judge did not recognize his discretion to impose a sentence of less than life imprisonment is cognizable on habeas review.

Nevertheless, petitioner is not entitled to habeas relief on this claim.  The Michigan Court of Appeals concluded, as a factual matter, that the sentencing judge was aware of his discretion to impose less than a life sentence.  The court of appeals noted that although the trial court did not explicitly mention its discretion to impose an indeterminate sentence, "nothing in the record suggests that the trial court was unaware of its discretion to impose a sentence less than life."  *Brown*, 2005

---

[3]Prior to the 1996 amendment to this statute, the penalty for petitioner's crime of conviction was a mandatory term of life imprisonment without possibility of parole.  The statute was again amended in 2002, to alter the amounts triggering certain sentences and the sentences themselves.

WL 2679688, at *5, slip op. at 6. This factual finding that the judge was aware of his sentencing discretion is presumed correct unless rebutted by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), and petitioner is entitled to relief on the basis of this finding only if it amounted to an unreasonable determination of the facts in light of the record, *see* 28 U.S.C. § 2254(d)(2).

Petitioner has presented no evidence to show that the trial judge, in fact, was unaware of his discretion to impose a sentence of less than life imprisonment. Petitioner's only argument is that the trial judge did not affirmatively recognize his discretion in imposing sentence. This alone, however, does not establish that the trial judge was unaware of his discretion. On the contrary, in federal criminal cases regarding departures from the Sentencing Guidelines, the courts have uniformly held that a judge need not affirmatively acknowledge his or her sentencing discretion and that the appellate courts presume that a judge is aware of his or her discretion absent evidence to the contrary. *See United States v. Farrow*, 198 F.3d 179, 199-200 (6th Cir. 1999); *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir. 1995) (citing cases). Further, nothing in the transcript of the sentencing proceeding suggests that the trial judge felt bound to impose a sentence of life imprisonment. The prosecutor noted that count I, the felony firearm count, carried a mandatory term and asked the court to impose that mandatory sentence, but did not make any other comment regarding a mandatory sentence on the other counts. *See* Sentence Tr., at 4. The trial court also recognized both the mandatory nature of the felony firearm sentence and the maximum penalty permitted on the marijuana conviction, but made no comment regarding either the maximum penalty or any mandatory penalty on the other drug conviction. In these circumstances, petitioner has failed to show that the trial court was acting under a misunderstanding that he lacked discretion to impose a sentence of less than life imprisonment. Accordingly, the Court should conclude that petitioner

32

is not entitled to habeas relief on this claim.

H.      *Ineffective Assistance of Counsel (Claim VI)*

Petitioner next contends that he was denied the effective assistance of counsel prior to trial. Specifically, he contends that the attorney who was the predecessor to his counsel at trial was ineffective at the suppression hearing and for drafting the "wherefore clause" of the forfeiture complaint in such a way that it was admitted against him at trial as an admission that he owned the money found with the drugs. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the

33

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.   *Analysis*

a. *Suppression Hearing Representation*

Petitioner first contends that counsel rendered constitutionally deficient performance at the suppression hearing. Specifically, petitioner contends that counsel was ineffective for failing to address petitioner's standing to challenge either search at 3178 Canton, and for failing to call the affiant of the search warrant affidavit for the lower apartment and other police officers who contradicted Lieutenant McNamara's account of the search. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

With respect to the standing issue, petitioner cannot show he was prejudiced. The trial court did find that petitioner lacked standing to challenge the search of the upper apartment because Tania Peterson testified that she rented the apartment from petitioner and that petitioner did not live there or have access to the apartment. *See* Mot. Hr'g Tr., dated 3/20/00, at 174. However, petitioner has offered no argument as to why, in fact, he had standing to challenge the search of the upper apartment. In the absence of some indication that an argument on petitioner's standing would have succeeded, petitioner cannot show that he was prejudiced by counsel's failure to assert his standing

34

to challenge the search of the upper apartment.  With respect to the lower apartment, although the trial court did note that the standing issue was questionable, *see id*. at 174-75, the court did not ultimately deny petitioner's motion to suppress on the basis of standing.  Rather, the court concluded that the search of the lower apartment was substantively valid.  *See id*. at 175-84.  Because his motion to suppress was not denied on the basis that he lacked standing to challenge the search, petitioner cannot show that he was prejudiced by counsel's failure to assert standing.  The court of appeals's conclusion to this effect, *see Brown*, 2005 WL 2679688, at *6, slip op. at 7, was therefore reasonable.

With respect to counsel's failure to call various police witnesses who would have contradicted Lieutenant McNamara, the court of appeals found that petitioner could not establish prejudice.  The court explained that "[b]ecause defendant's second attorney was permitted to develop a factual record on what most of these witnesses would have testified to in support of his motion for a second evidentiary hearing, and because the trial court did not err in determining that the additional testimony would not have caused a different result, defendant was not prejudiced by his original attorney's failure to call these witnesses."  *Brown*, 2005 WL 2679688, at *6, slip op. at 7.  This conclusion was likewise reasonable.  As detailed in connection with petitioner's Fourth Amendment claim, petitioner's second counsel presented substantial evidence as to what these witnesses testified to in the forfeiture proceeding and what testimony they would give in a second suppression hearing.  The trial court ultimately determined that the additional evidence presented by petitioner would not have changed the result of the suppression hearing.  Because the suppression motion would have been denied even had counsel presented this additional evidence, petitioner cannot show that he was prejudiced by counsel's performance.  *See Kimmelman v. Morrison*, 477

35

U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Drafting of Forfeiture Pleading

Petitioner also contends that counsel was ineffective for drafting the forfeiture answer in such a way that it became admissible against him at trial as a statement against interest.  The Michigan Court of Appeals rejected this claim, noting that petitioner had failed to "cite any legal authority in support of his argument that the right to the effective assistance of counsel extends to counsel's representation in other proceedings." *Brown*, 2005 WL 2679688, at *5, slip op. at 6.  In his habeas pleadings, petitioner has yet to cite a single case suggesting that an attorney's performance in a separate proceeding can provide a basis of an ineffective assistance of counsel claim.  And after extensively researching the issue, I have been unable to locate a single case–state or federal–suggesting such a rule.  Importantly, counsel's alleged ineffectiveness in the forfeiture proceeding does not itself provide a basis for an ineffective assistance of counsel claim.  As the Supreme Court has explained, "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" *Austin v. United States*, 509 U.S. 602, 608 (1993).  The Supreme Court has also held that the Sixth Amendment right to counsel is limited to those criminal proceedings which contain a risk of loss of liberty. *See Scott v. Illinois*, 440 U.S. 367, 373 (1979). Because a forfeiture proceeding is not a "criminal prosecution" and is not attended by a risk of the

36

loss of liberty, the courts have uniformly held there is no right to counsel in a forfeiture proceeding. *See, e.g.*, *United States v. Saccoccia*, 564 F.3d 502, 505 (1st Cir. 2009); *United States v. 87 Blackheath Rd.*, 201 F.3d 98, 99 (2d Cir. 2000); *United States v. $100,375.00 in U.S. Currency*, 70 F.3d 438, 440 (6th Cir. 1995); *United States v. $292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir. 1995); *United States v. 7108 West Grand Ave., Chicago, Ill.*, 15 F.3d 632, 635 (7th Cir. 1994). And where there is no Sixth Amendment right to counsel, there can be no corollary right to the effective assistance of counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam).

Even if such a claim were cognizable, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had petitioner's forfeiture answer not been admitted at his trial.  While the answer provided some proof that the money found in the closet belonged to petitioner, and hence that the drugs and guns belonged to him as well, it is not probable that the jury would have reached a different result in the absence of this evidence.  It was undisputed that petitioner owned the apartment building, and there was evidence that petitioner was Tenisha Peterson's boyfriend and sometimes lived in the lower apartment.  There was also evidence that men's clothing was found in the apartment.  *See* Trial Tr., dated 4/24/02, at 42.  Further, it was undisputed that petitioner was present in the apartment at the time the police entered to effectuate his arrest and the search of the apartment.  Finally, there was evidence that a key obtained from petitioner's person opened the lock on the closet in which the drugs, guns, and money were found. *See id*. at 30-32, 36.  In light of this evidence, there is not a reasonable probability that absent the forfeiture answer evidence the jury would have reached a different conclusion regarding petitioner's possession and control of the items found in the closet.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

37

I.      *Cumulative Error (Claim VII)*

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the above identified errors.  The Court should conclude that petitioner is not entitled to habeas relief on this basis.  It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983).  This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994).  As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim fails.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver

38

of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: July 10, 2009


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on July 10, 2009.

s/Eddrey Butts
Case Manager